T.C. Summary Opinion 2019-22


UNITED STATES TAX COURT


JASPER J. NZEDU AND VIVIAN A. NZEDU, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 29734-15S.                    Filed August 21, 2019.


Jasper J. Nzedu, pro se.

<u>Ryan Z. Sarazin</u>, for respondent.


SUMMARY OPINION


CARLUZZO, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463[1] of the Internal Revenue Code in effect when the

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986 (Code), as amended and in effect for the relevant period.  Rule references are to the Tax Court Rules of Practice and Procedure.

petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated September 4, 2015 (notice), respondent determined deficiencies in petitioners' Federal income tax, an addition to tax, and an accuracy-related penalty as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|------------|---------------------------------|----------------------|
| 2012 | $17,348 | --- | $3,355.80 |
| 2013 | 35,030 | $843.75 | --- |

With the exception of petitioners' entitlement to a $66,950 passthrough loss deduction claimed on their 2012 Federal income tax return and the above-listed addition to tax and accuracy-related penalty, issues relating to adjustments made in the notice have been resolved by the parties. The remaining issues addressed and decided in this opinion arise from deductions claimed on a 2012 amended Federal income tax return and 2013 Federal income tax return petitioners submitted to respondent after the notice was issued. After concessions,[2] those issues are whether petitioners are: (1) entitled to deduct a $66,950 loss incurred by

---

[2]Among other concessions, petitioners concede that they underreported taxable interest by $720 for 2012.

Washington Tax Associates, Inc. (WTA), in 2012, which depends on whether that corporation properly elected subchapter S status by filing a proper Form 2553, Election by a Small Business Corporation; (2) entitled to various deductions claimed on Schedule C, Profit or Loss From Business, included on a 2012 amended return not processed by respondent (2012 amended return) relating to National Tax Associates, LLC (NTA); (3) entitled to various Schedule C deductions relating to NTA shown on petitioners' late-filed 2013 return; (4) liable for a section 6651(a)(1) addition to tax for 2013; and (5) liable for a section 6662(a) accuracy-related penalty for 2012.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners, who are married to each other, resided in Virginia.

Mrs. Nzedu is a medical doctor. Mr. Nzedu (petitioner) is an attorney. Before the years in issue his experience included practicing law with the law firm of Dewey Ballantine and working in the financial products division of the accounting firm of Ernst & Young.

During 2012 and 2013 petitioner owned and operated Jasper Attorneys & Associates, PLLC (Jasper Attorneys). Petitioner also formed two other businesses around the same time. On or around November 14, 2011, petitioner incorporated

WTA, a corporation organized under the laws of Virginia. To the extent that any WTA stock had been issued, petitioner was the sole owner of it. On or around December 12, 2011, petitioner formed NTA, a Virginia limited liability company. Although the various enterprises were separate legal entities, the functions of the businesses, while distinct, appear closely integrated. As best we can tell, WTA provided online tax software while NTA operated as a tax preparation company.

Throughout the years in issue the offices of Jasper Attorneys, WTA, and NTA were all in a single office suite in Alexandria, Virginia (Alexandria office). Petitioner conducted all of his business activities from the Alexandria office. The businesses all shared the same utilities and office equipment.

During 2012 and 2013 WTA maintained a business checking account at Bank of America, and NTA maintained a business checking account at Virginia Commerce Bank. All of the checks drawn on the NTA business checking account were written to WTA.

Payments for what appear to be business expenses related to one or the other of the three business entities were made from WTA's business checking account or from petitioner's Discover credit card, the balance of which was generally paid from WTA's business checking account.

Apparently, it was petitioner's business practice to scan financial records and store them digitally on his laptop computer. According to a City of Alexandria Police Department report, on December 17, 2013, petitioner reported that his Alexandria office was burglarized on November 25, 2013, and that his laptop computer was stolen in the burglary.

Petitioners' 2012 self-prepared, joint Federal income tax return was timely filed on August 26, 2013 (2012 return). That return includes a Schedule C for Jasper Attorneys. The 2012 return did not include a Schedule C for NTA. Petitioners reported their share of WTA's net loss of $66,950 as "nonpassive loss from Schedule K-1" on a Schedule E, Supplemental Income and Loss, attached to the 2012 return.

On or around July 28, 2016, after the petition had been filed, petitioners submitted the 2012 amended return. The 2012 amended return was not processed by respondent. In addition to the Schedule C relating to Jasper Attorneys, petitioners attached a Schedule C relating to NTA to their 2012 amended return. On the NTA Schedule C petitioners reported gross receipts of $3,651 and total expenses of $57,614, resulting in a $53,963 net loss.

Petitioners' 2013 return, filed on March 16, 2015, includes a Schedule C for Jasper Attorneys and a Schedule C for NTA. On the Jasper Attorneys Schedule C

petitioners reported gross receipts of $67,500 and total expenses of $92,318, resulting in a $24,818 net loss. On the NTA Schedule C petitioners reported gross receipts of $3,500 and total expenses of $29,779, resulting in a $26,279 net loss.

In the notice respondent disallowed the $66,950 nonpassive flowthrough loss from WTA for 2012 "since it has been determined that * * * [WTA] is a C Corporation, and as such, the corporations [sic] profit/loss is not allowable as a flow-thru [sic] item at the individual level." Respondent further determined that petitioners were liable for an accuracy-related penalty under section 6662(a) on various grounds for 2012 and for the addition to tax under section 6651(a)(1) for 2013. Other adjustments made in the notice are computational or have been conceded by one or the other of the parties and need not be addressed.

## Discussion

### I. WTA Subchapter S Election

Section 1362(a) provides that a "small business corporation" may elect to be taxed as a passthrough entity under subchapter S of the Code. A small business corporation makes this election (S election) by filing with the Internal Revenue Service (IRS) a completed Form 2553. Sec. 1.1362-6(a)(2), Income Tax Regs. Before an S election is valid, all shareholders as of the date the election is made must consent to that election. Sec. 1362(a)(2). A shareholder consents to an

S election by signing and dating the Form 2553 submitted by the S corporation, see sec. 1.1362-6(b)(3)(i), Income Tax Regs., or by separately submitting to the IRS a signed consent statement which sets forth certain information, see id. subpara. (1).[3]

Petitioner asserts that he personally prepared a Form 2553 in 2011 for WTA and then gave it to one of his employees with instructions to mail it to the IRS. According to respondent, petitioner did not make a valid S election until 2015.

Respondent's records do not show that a Form 2553 on behalf of WTA was received in 2011, nor has petitioner provided any persuasive evidence of timely mailing Form 2553 on behalf of WTA with respect to its 2012 tax year. Respondent did receive a Form 2553 on behalf of WTA effective January 1, 2015. Accordingly, we reject petitioners' claim that a Form 2553 was filed with respondent on behalf of WTA for 2012. WTA did not qualify as an S corporation

---

[3]The consent statement must set forth the name, address, and taxpayer identification number of the shareholder, the number of shares of stock owned by the shareholder, the date or dates on which the stock was acquired, the date on which the shareholder's taxable year ends, the corporation's name, the corporation's taxpayer identification number, and the election to which the shareholder consents. See sec. 1.1362-6(b)(1), Income Tax Regs.

for 2012 or 2013, and petitioners are not entitled to deduct a $66,950 passthrough loss incurred by WTA in 2012.[4]

II.  Schedule C Deductions

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any claimed deduction.[5]  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  This burden requires the taxpayer to substantiate expenses underlying deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or

---

[4]As best we can determine, there was no valid S election made for WTA until 2015.

[5]Petitioners do not claim and the record does not otherwise demonstrate that the provisions of sec. 7491(a) are applicable here, and we proceed as though they are not.

incurred. <u>See</u> sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. at 89-90; sec. 1.6001-1(a), Income Tax Regs.

Taxpayers may deduct ordinary and necessary expenses paid in connection with operating a trade or business. Sec. 162(a); <u>Boyd v. Commissioner</u>, 122 T.C. 305, 313 (2004). On the other hand section 262(a) generally disallows any deduction for personal, living, or family expenses.

As a general rule, if a taxpayer provides sufficient evidence that the taxpayer has incurred a trade or business expense contemplated by section 162(a) but is unable to adequately substantiate the amount, the Court may estimate the amount and allow a deduction to that extent. <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, there must be some basis upon which an estimate may be made. <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985). Otherwise, any allowance would amount to unguided largesse. <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957).

Deductions for expenses attributable to travel ("including meals and lodging while away from home"), entertainment, gifts, and the use of "listed property" (as defined in section 280F(d)(4) and including passenger automobiles), if otherwise allowable, are subject to strict rules of substantiation. <u>See</u> sec. 274(d); <u>Sanford v.</u>

Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  With respect to deductions for these types of expenses, section 274(d) requires that the taxpayer substantiate either by adequate records or by sufficient evidence corroborating the taxpayer's own statement:  (1) the amount of the expense, (2) the time and place the expense was incurred, (3) the business purpose of the expense, and (4) in the case of an entertainment or gift expense, the business relationship to the taxpayer of each expense incurred.  For "listed property" expenses, the taxpayer must establish the amount of business use and the amount of total use for such property.  See sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the expenditure and documentary evidence (e.g., receipts or bills) of certain expenditures.  Sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Substantiation by other sufficient evidence requires the production of corroborative evidence in support of the taxpayer's statement

specifically detailing the required elements. Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

Petitioners did not treat NTA as a trade or business on their 2012 return but did treat NTA as a trade or business on their 2012 amended return and 2013 return. Petitioners' 2012 amended return and 2013 return were submitted to the IRS after the notice had been mailed. On the basis of the submission of the 2012 amended return and the 2013 return, petitioners now claim that they are entitled to deductions for business expenses related to NTA for 2012 and 2013. According to petitioner, expenses shared among his business entities were allocated appropriately among those entities for income tax reporting purposes.

According to respondent, petitioners have failed to adequately substantiate the amount paid or otherwise establish that the expenses reported on the NTA Schedules C were not reported on the 2012 amended return or 2013 return by one of petitioner's other business entities. Respondent further contends that to the extent petitioners substantiated certain payments, those payments are not deductible on their joint Federal income tax returns because they were paid by WTA.

Under the circumstances we expect that petitioners' position on the point has been prompted, at least in part, in an attempt to reduce the 2012 and 2013

deficiencies determined in the notice. Whether it was or was not, for the following reasons we reject their claims of deductions for expenses reported on the NTA Schedules C.

For most of the business expenses, petitioners failed to maintain adequate records. To the extent petitioners produced substantiating records, such as bank records, receipts, credit card statements, and other documentation, they were disorganized and incomplete. Petitioner's testimony brings little clarity to the picture.

Petitioners explain that the lack of detailed substantiating records is due to the theft of petitioner's laptop. According to petitioners, because they have introduced evidence, in the form of petitioner's testimony and other documents, showing the expenses incurred, they are entitled to the deductions as claimed on the returns. When a taxpayer's records have been destroyed or lost because of circumstances beyond the taxpayer's control, the taxpayer may substantiate his expenses by making a reasonable reconstruction of the expenditures or use. See sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). A taxpayer is required to reconstruct what records he can. See, e.g., Chong v. Commissioner, T.C. Memo. 2007-12, slip op. at 9. In this case, however, the evidence presented discloses a tangled web of shared expenses that is difficult to

unravel. We are unable to determine whether expenses reported on the NTA Schedules C were already reported and allowed as deductions by respondent by one or the other of petitioner's other businesses. Nor is there sufficient evidence in the record to provide a basis for estimating the expenses. See Cohan v. Commissioner, 39 F.2d at 543-544; Vanicek v. Commissioner, 85 T.C. at 742-743.

Moreover, petitioners' records show that payments for purported NTA business expenses were made from WTA's business checking account or from petitioner's Discover credit card, the balance of which was generally paid from WTA's business checking account. According to petitioner, he paid NTA expenses from the WTA account because it was "more convenient * * * to pay expenses from one account" and then reimburse WTA. The record certainly does not allow us to find that WTA was reimbursed for the payments. Nonetheless, having elected to conduct the WTA business in corporate form, petitioners are bound by the Federal income tax consequences of that election. See Higgins v. Smith, 308 U.S. 473 (1940). WTA's corporate existence cannot be disregarded for Federal income tax purposes, see Moline Props., Inc. v. Commissioner, 319 U.S. 436 (1943), and thus petitioners are not entitled to deduct amounts paid by WTA on their NTA Schedules C.

For these reasons, petitioners are not entitled to the deductions now claimed on their NTA Schedules C shown on their 2012 amended return and 2013 return.

III.  Section 6651(a)(1) Addition to Tax for 2013

Petitioners' 2013 return was due to be filed on or before April 15, 2014, but it was not filed until March 16, 2015.  See secs. 6072(a), 7503.  Consequently, respondent imposed a section 6651(a)(1) addition to tax.

Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a timely return unless the taxpayer proves that such failure is due to reasonable cause and is not due to willful neglect.  See also United States v. Boyle, 469 U.S. 241, 245 (1985); Harris v. Commissioner, T.C. Memo. 1998-332.  Section 6651(a)(1) imposes an addition to tax of 5% of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, not to exceed 25% in the aggregate.

Respondent's records demonstrate that petitioners' return was not timely filed, and petitioners do not dispute the point.  Respondent's section 7491(c) burden of production has been met with respect to the imposition of the section 6651(a)(1) addition to tax; and because petitioners have failed to demonstrate that their failure to file their 2013 return timely was due to reasonable cause, respondent's imposition of a section 6651(a)(1) addition to tax is sustained.

IV. <u>Section 6662(a) Accuracy-Related Penalty for 2012</u>

Lastly, we consider whether petitioners are liable for a section 6662(a) accuracy-related penalty for 2012. Relying upon various grounds, including an underpayment due to a substantial understatement of income tax, respondent argues that they are. <u>See</u> sec. 6662(a)-(d).

Section 6662(a) and (b)(2) imposes a penalty of 20% of the portion of an underpayment of tax attributable to a substantial understatement of income tax. An understatement of income tax is substantial within the meaning of section 6662 if, as relevant here, the understatement exceeds $5,000. <u>See</u> sec. 6662(d)(1)(A); sec. 1.6662-4(b), Income Tax Regs.

Respondent bears the burden of production with respect to the imposition of the penalty imposed in the notice and here in dispute, <u>see</u> sec. 7491(c), and that burden has been satisfied because the understatement of income tax exceeds $5,000, <u>see</u> secs. 6211, 6662(d)(2), 6664(a).

Section 6751(b)(1) provides that, subject to certain exceptions in section 6751(b)(2), no penalty shall be assessed unless the initial determination of the assessment is personally approved in writing by the immediate supervisor of the individual making the determination or such higher level official as the Commissioner may designate. Written approval of the initial penalty

determination under section 6751(b)(1) must be obtained before the proposed penalty is first formally communicated to the taxpayer in a writing that also advises the taxpayer of his rights to appeal the penalty with the IRS Office of Appeals. Clay v. Commissioner, 152 T.C. __, __ (slip op. at 44) (Apr. 24, 2019). Compliance with section 6751(b)(1) is part of the Commissioner's burden of production in any deficiency case in which a penalty subject to section 6751(b)(1) is asserted. Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42.

The section 6662(a) accuracy-related penalty determined in the notice was properly approved as required by section 6751(b)(1). The record includes a Civil Penalty Approval Form, approving imposition of an accuracy-related penalty against petitioners for 2012 and executed by the IRS tax examiner's immediate supervisor before the date the notice was issued. As a result, we find that respondent met his burden of production with respect to the negligence penalty.

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith with respect to that portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners bear the burden of proving that they had reasonable cause and acted in good faith with respect to the underpayment. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001).

Petitioners conceded that they received but failed to report $720 in interest income on their 2012 return and have not shown reasonable cause for omitting the interest income. The remaining portion of the understatement results from petitioners' reporting their share of WTA's net loss of $66,950 as "nonpassive loss from Schedule K-1" on a Schedule E attached to the 2012 return. Considering petitioner's experience, knowledge, and education, deducting the corporation's loss on petitioners' 2012 return was not reasonable. Accordingly, they are liable for a section 6662(a) accuracy-related penalty.

To reflect the foregoing,

Decision will be entered under

Rule 155.